**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 19-150** |
| **MAURICE DURIO** | **SECTION "L"** |

## ORDER & REASONS

Before the Court is pro se defendant Maurice Durio's Petition for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b). R. Doc. 192. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

### I.      BACKGROUND

On February 18, 2021, Mr. Durio pled guilty to Count One of a Superseding Bill of Information, which charged him with aiding and abetting the possession of fifteen or more fraudulent access devices, in violation of Title 18, United States Code, Sections 2 and 1029(a)(3). His plea agreement provided that he "waives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Sections 2255 and 2254, Rule 60 of the Federal Rules of Civil Procedure . . . and any other collateral challenges to his sentence of any kind." R. Doc. 104 at 3. The only exception to this provision was that Mr. Durio reserved the right "to bring a direct appeal of any sentence imposed in excess of the statutory maximum" or to raise an "ineffective assistance of counsel claim." *Id.*

In preparation for sentencing, the Probation Office prepared a Pre-Sentence Investigation Report which calculated Mr. Durio's offense level at 33. R. Doc. 153 at 11. Under USSG §2B1.1(a), Probation found that Mr. Durio's offense had a base offense level of 6. *Id.* However, USSG §2B1.1(b) provides that the level should be increased based on greater levels of "loss"

1

involved in the crime. *Id.* The commentary to the guidelines defines "loss" to mean "the greater of actual loss or intended loss." USSG §2B1.1 cmt. 3(A). The commentary further provides that "in a case involving any counterfeit access device or unauthorized access device, loss . . . shall not be less than $500 per access device." USSG §2B1.1, cmt. 3(F)(i). Because 380,000 card numbers were found on computers belonging to Mr. Durio and his co-defendant, Probation multiplied 380,000 times $500 and concluded that the amount of "intended loss" was $190,000,000. R. Doc. 153 at 11. Accordingly, Probation applied a 26-point increase to Mr. Durio's base offense level pursuant to USSG §2B1.1(b). *Id.*

On June 30, 2022, Mr. Durio appeared before the Court for sentencing. He objected to the 26-level increase, arguing that the Court should not follow the commentary's directive to calculate the amount of intended loss as at least $500 per access device. R. Doc. 160 at 2. He noted that in *United States v. Riccardi*, the Sixth Circuit refused to apply the commentary's formula of $500 per access device because it found that *United States v. Stinson* was no longer good law. 989 F.3d 476, 485, 488 (6th Cir. 2021). In *Stinson*, the Supreme Court held that the commentary's interpretation of a guideline "must be given controlling weight unless it is plainly erroneous or inconsistent with" the guideline. 508 U.S. 36, 45 (1993). The *Stinson* court reasoned that, although the Sentencing Commission is not an agency, its commentary was "akin to an agency's interpretation of its own legislative rules." *Id.* Accordingly, the Court found that the Commission's commentary to the guidelines should be given the same amount of deference given to an agency's interpretation of its own regulation: that is, "*Seminole Rock*" deference. *Id.* Under this standard, courts conduct a "plain-error test" and "give great deference to the commentary." *Riccardi*, 989 F.3d at 484.

However, thereafter in *Kisor v. Wilkie*, the Court modified *Seminole Rock* deference in the original context of an agency's interpretation of its own regulation. 588 U.S. 558, 573, (2019). It

made the standard less deferential by requiring a finding that that the regulation was "genuinely ambiguous" before the agency's interpretation could be given weight. *Id.* This modified the original concept of *Seminole Rock* deference wherein the agency's interpretation was to be given weight even if the regulation was "unambiguous." *See Stinson*, 508 U.S. at 44.

Thus, in *Riccardi* the Sixth Circuit reasoned that, because *Stinson's* holding regarding the commentary was modeled on *Seminole Rock* deference, and that standard had been changed, *Stinson's* foundation had shifted. 989 F.3d at 485. Accordingly, it held that the new, lower-deference standard laid out in *Kisor* should be applied to the Sentencing Commission's commentary to the guidelines. *Id.* Applying this lower standard of deference to the commentary on calculating intended loss in the context of stolen access devices, the Court held that "[n]o reasonable person would define the 'loss' from a stolen [] card as an automatic $500." *Id.* at 486. Accordingly, the court held that the district court should have refused to calculate the defendant's intended loss using the commentary's methodology. *Id.* at 489.

At his sentencing, Mr. Durio argued that this Court should follow *Riccardi* and find that *Kisor* lowered the level of deference to be given the commentary and, accordingly, find that calculating loss as $500 per device was unreasonable. R. Doc. 158-1 at 2. However, this Court denied Mr. Durio's objection. R. Doc. 192 at 23. The Court noted that although the Sixth Circuit and the Ninth Circuit have held that *Kisor* modifies *Stinson* and thus lowers the deference due to the commentary, the Fifth Circuit has disagreed. *Id.* at 12. The Court pointed to *United States v. Vargas* and *United States v. Cardenas*, both cases where the Fifth Circuit held that *Stinson's* higher level of deference to the commentary was still good law. *Id.*

Based on this, the Court calculated the intended loss using the formula provided in the commentary and found a guidelines range of 151-188 months and a statutory maximum of 120

3

months. R. Doc. 181. The Court granted a downward variance based on Mr. Durio's family ties and pre-sentence rehabilitation. *Id.* Ultimately, the Court sentenced Mr. Durio to 108 months in custody. R. Doc. 180.

## II.   PRESENT MOTION

The Court is in receipt of Mr. Durio's pro se "Petition for Relief from Judgment Pursuant to Federal Rules of Civil Procedure 60(b)." R. Doc. 192. He argues that his wrongful sentence is an "extraordinary circumstance" that justifies relief under Rule 60(b). *Id.* at 5. He cites *In re West*, 103 F.4th 417, 420 (6th Cir. 2024) for the proposition that criminal defendants can bring motions under Rule 60(b) for relief from a judgment. *Id.* at 9. As to the wrongful nature of his sentence, Mr. Durio argues that the Court wrongfully calculated his guidelines by computing the intended loss as $500 for every access device. *Id.* at 5.

First, he avers that the Court "failed to address all grounds for relief" and applied an "unreasonable guideline sentence" by using the commentary's method of calculating loss. *Id.* at 4. He argues that the Court "failed to consider the persuasive arguments in other district courts" resulting in a "miscarriage of justice." *Id.* at 5, 6. He contends that "the correct interpretation of the law can be found in *Riccardi*." *Id.* at 1. Accordingly, he avers that his sentence must be reconsidered "in light of the rules of 60(B) in conjunction with *Riccardi*." *Id.* at 7. Second, he contends that his sentence wrongfully creates a "National Sentence Disparity" because "other similar offenders received a lower sentence." *Id.* at 5. He maintains that the Court did not consider this factor at sentencing. *Id.* Moreover, he argues that allowing such sentencing disparities will "burn the faith of the public." *Id.* at 7. Finally, he points to the recent case of *Loper Bright Enterprises v. Raimondo*, where the Supreme Court overruled the *Chevron* doctrine of deference

to agency interpretations of statutes. *Id.* at 1. He argues that the "*Kisor* and *Chevron* line of cases has come into question" and his sentence should be "set aside." *Id.* at 2.

## III.   DISCUSSION

The Court denies Mr. Durio's motion. First—and most fundamentally—the Court notes that, as part of his plea agreement, Mr. Durio agreed that he "waives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under . . . Rule 60 of the Federal Rules of Civil Procedure . . . and any other collateral challenges to his sentence of any kind." R. Doc. 104 at 3. The only exceptions to this waiver were ineffective assistance of counsel, which Mr. Durio does not assert, and appeal of a sentence above the statutory maximum, which he cannot assert because his sentence was 12 months below the maximum. *Id.* "The Fifth Circuit Court of Appeals has routinely upheld waivers of collateral review, and holds that 'an informed and voluntary waiver of post-conviction relief is effective to bar such relief.'" *United States v. Williams*, No. CR H-14-275-1, 2022 WL 1423226, at *2 (S.D. Tex. May 4, 2022) (quoting *United States v. Wilkes*, 20 F. 3d 651, 653 (5th Cir. 1994). Even where relevant law has changed since sentencing "the Fifth Circuit has repeatedly held that a change in law does not revive a claim otherwise barred by a plea waiver." *Id.*

Here, Mr. Durio entered into a plea agreement with the Government. R. Doc. 104.  In his plea agreement, Mr. Durio expressly waived the right to collateral review of his sentence, including collateral review through a Rule 60(b) motion. *Id.* at 3. In return for Mr. Durio waiving these rights, the Government agreed that it would request that the Court dismiss all Counts pending against Mr. Durio other than Count One of the Superseding Bill of Information. *Id.* at 1. Having obtained the benefit of his plea bargain, Mr. Durio cannot now assert rights he expressly waived as part of the bargain.

Second, even if Mr. Durio were able to bring 60(b) motion for relief from a judgment, the Court observes that such a motion is likely not the proper vehicle for his claims. A motion pursuant to 28 U.S.C. "Section 2255 provides the primary means of collateral attack on a federal sentence." *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990). Only in "extraordinary circumstances" may a criminal defendant bring a Rule 60 motion. *Buck v. Davis*, 580 U.S. 100, 123. (2017). Furthermore, "[t]o open the Rule 60(b) door ... there must be a showing of a non-merits-based defect in the district court's earlier decision on the federal habeas petition." *In re Jasper*, 559 F. App'x 366, 371 (5th Cir. 2014) (quoting *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)). Notably, in *In re West*, the case Mr. Durio cites for the proposition that his Rule 60 motion is proper, the defendant had already brought a § 2255 petition and a habeas petition. 103 F.4th 417, 419 (6th Cir. 2024). Here, there has been no "earlier" federal habeas petition, let alone an alleged procedural defect in a decision on such a petition. *Id.* Rather, Mr. Durio is attempting to challenge his sentence as invalid. Accordingly, it does not appear that a Rule 60(b) motion is viable.

Furthermore, the Court will not simply reformulate Mr. Durio's motion as a § 2255 motion to vacate sentence. First, Mr. Durio also waived his right to bring a § 2255 motion in his plea agreement. R. Doc. 104 at 3. Moreover, Courts are precluded from construing a defendant's motion as a § 2255 petition absent notice and consent of the defendant *Castro v. United States*, 540 U.S. 375, 382-83 (2003). Thus, such re-construction would be both unhelpful and impermissible.

 Finally, even if Mr. Durio had not waived his right to challenge his sentence on collateral review, and even if he had brought his motion under a viable procedural vehicle, his motion still lacks merit. His main argument is that the Court should have followed the *Riccardi* court and refused to calculate the guidelines using the commentary. However, Mr. Durio already raised this exact objection at sentencing. His Counsel ably objected to the guidelines and urged the Court to

adopt the reasoning of *Riccardi*, both in a written objection and in oral argument at sentencing. R. Doc. 158; R. Doc. 192 at 8, 26. The Court denied the objection because *Riccardi* is a Sixth Circuit case, and the Fifth Circuit—which binds this Court—reached the opposite conclusion in *United States v. Vargas*. R. Doc. 192 at 13.

Although Mr. Durio argues that this circuit split creates unfair sentencing disparities, the Court cannot simply ignore the directive of the Fifth Circuit to apply the commentary absent plain error. The Court notes that, after Mr. Durio's sentencing, the Fifth Circuit reheard *Vargas* in an *en banc* review and reiterated its conclusion that *Stinson* controls and requires Courts to apply the commentary absent plain error. *United States v. Vargas*, 74 F.4th 673, 681 (5th Cir. 2023), cert. denied, 144 S. Ct. 828 (2024) ("[N]othing in *Kisor* suggests it meant to modify *Stinson*."). Overall, the Court has already fully considered Mr. Durio's argument that *Riccardi* is the correct law and denied this argument. Accordingly, Mr. Durio has not alleged any new "extraordinary circumstances" that merit relief from his sentence.

Finally, Mr. Durio maintains that the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo* requires reconsideration of his case. However, this argument is without merit. In *Loper*, the Supreme Court struck down "*Chevron* deference," which required courts to defer to an agency's reasonable interpretation of an ambiguous statute. 144 S. Ct. 2244, 2273 (2024). But crucially, *Stinson* specifically held that *Seminole Rock* deference, not *Chevron* deference, is the model for a court's deference to the commentary to the guidelines. *See Stinson* 508 U.S. at 44. And given that the Fifth Circuit has unequivocally held that *Kisor's* subsequent modification to *Seminole Rock* deference itself does not disturb *Stinson*, there is no reason to believe that the Supreme Court's reconsideration of *Chevron* deference would have any bearing on the vitality of *Stinson*. *Vargas*, 74 F.4th 673, 681. Simply put, the only kind of deference

relevant to this case is *Seminole Rock* deference, and even modifications to that standard have not impacted the Fifth Circuit's determination that *Stinson* stands. *Id.* Accordingly, *Loper* does not alter the validity of Mr. Durio's sentence.

Overall, the Court finds that Mr. Durio's motion is barred by his plea waiver, is likely not brought by a proper vehicle, and ultimately lacks merit.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Mr. Durio's Petition for Relief from Judgment, R. Doc. 192, is **DENIED.**

New Orleans, Louisiana, this 12th day of August, 2024.

HONORABLE ELDON E. FALLON